USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_5/27/2015_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

H.I.S. JUVENILES, INC., a New York       :
corporation,                                   :
                                      :
                   Plaintiff,   :       15-CV-1367 (VEC)
                                   :
          -against-          :       MEMORANDUM
                                   :       OPINION & ORDER
TOKIO MARINE SPECIALITY INSURANCE   :
COMPANY, a Delaware corporation; and GREAT :
AMERICAN INSURANCE E&S INSURANCE   :
COMPANY, an Ohio corporation,       :
                                   :
                   Defendants.  :

------------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Plaintiff H.I.S. Juveniles, Inc., brings this declaratory judgment action against Tokio

Marine Specialty Insurance Company and Great American E&S Insurance Company.  Plaintiff is

defending a lawsuit in Colorado, *Gold, Inc. v. H.I.S. Juveniles, Inc.*, No. 14-CV-2298 (D. Colo.);

it alleges that Defendants owe a duty to defend Plaintiff in the Colorado action.  Defendants

acknowledge their duty to defend (subject to reservations of rights); they argue, therefore, that

the Court lacks subject matter jurisdiction because there is no case or controversy.  Because any

disagreement between the parties pertains only to the speed with which Defendants must remit

payment, the Court finds that there is not a sufficient amount in controversy to invoke the

Court's subject matter jurisdiction.  Accordingly, Plaintiff's case is DISMISSED without

prejudice.[1]

---

[1]     Although the case is being resolved on jurisdictional grounds, it is worth noting that the Court is not
unsympathetic to the Plaintiff's position.  It has paid for insurance from the Defendants.  Part of what it paid for was
litigation defense.  The Defendants have conceded that they are obligated to defend; there is, therefore, little excuse
for their lackadaisical approach to paying justly-tendered invoices for legal services.

## BACKGROUND

At all times relevant to this action, Plaintiff maintained insurance policies with the Defendants providing for indemnification for personal and advertising injury and promising defense of suits seeking damages caused by such injury. *See* First Am. Compl. ("FAC") ¶¶ 16-18. Plaintiff is currently defending a trade dress infringement and unfair competition action in the United States District Court for the District of Colorado, *id.* Ex. 1; neither Defendant contests the applicability of Defendants' policies to the Colorado action (although both insurers agreed to defend subject to reservations of rights).

Prior to initiating this action, Plaintiff submitted invoices to both Defendants, seeking to recoup defense costs incurred to date in the Colorado action. Pl. Letter of Apr. 23, 2015 at 3; *see also* Gauntlett Decl. Exs. 8 and 9. While the Defendants both acknowledge that they owe a duty to defend Plaintiff, neither paid any of the invoices that Plaintiff submitted. Accordingly, Plaintiff initiated this action, apparently in an effort to secure the expeditious repayment to which it believed it was entitled.

After this action was initiated, Great American issued Plaintiff a check in the total amount of legal expenses incurred to that point (approximately $56,000). Pl. Ex. 12, Dkt. 29-1. Plaintiff's defense in Colorado has continued to generate costs; in May, Plaintiff submitted additional invoices to both Defendants, seeking to recover an additional $30,000. Pl. Ex. 14, Dkt. 29-3.

At the Court's Initial Pretrial Conference, the Defendants raised the possibility that the Court lacked subject matter jurisdiction. The Court ordered the parties to file letter briefs on the issue and, finding that there is no case or controversy over which the Court can exercise its subject matter jurisdiction, dismisses Plaintiff's suit without prejudice.

2

## DISCUSSION

The parties brief two potential threshold obstacles preventing the Court from exercising jurisdiction – the "cases or controversies" requirement of Article III and the minimum "amount in controversy" threshold of the statute that provides for diversity jurisdiction.  As to both issues, "[t]he party asserting jurisdiction bears the burden of proof." *Penn. Public Sch. Emps. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 118 (2d Cir. 2014).  While the Court is dubious about the existence of a case or controversy, there is clearly no controversy that satisfies the amount in controversy requirement of the Court's diversity jurisdiction; accordingly, Plaintiff's case is dismissed.

## I.      Case or Controversy

"'[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" *ACLU v. Clapper*, --- F.3d ---, ---, No. 14-42-cv, *slip op.* at 26 (2d Cir. May 7, 2015) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. ---, ---, 133 S. Ct. 1138, 1146 (2013)).  The Declaratory Judgment Act, 28 U.S.C. § 2201, which furnishes the basis for this action, incorporates the requirement of an "actual controversy" before the federal courts can issue a declaratory judgment.[2]  The determining inquiry in gauging whether a lawsuit meets that requirement is "'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *MedImmune, Inc. v. Genentech,*

---

[2]        In relevant part, the Declaratory Judgment Act, 28 U.S.C. § 2201(a),  provides that

In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

*Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273

(1941)).  Defendants advance two arguments in support of their claim that this actions presents

no case or controversy – they claim that it was mooted by Great American's paying the money

that had been sought to that point and by the Defendants' recognition that they owe a duty to

defend.  Together, they argue, those facts result in the absence of an actual controversy.

### A.  This Case Is Not Moot

A case is moot pursuant to Article III's Case or Controversy requirement when "it is

impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Tanasi v.*

*New Alliance Bank*, --- F.3d ---, ---, No. 14-1389-cv, *slip op.* at 8 (2d Cir. May 14, 2015)

(quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. ---, ---, 132 S. Ct. 2277, 2287

(2012) (alterations omitted)).  "A justiciable claim becomes moot, and thus beyond the

jurisdiction of a federal court, when subsequent events deprive the parties of any practical

interest in the outcome of the litigation." *Republic Ins. Co. v. Masters, Mates & Pilots Pension*

*Plan*, 77 F.3d 48, 51 (2d Cir. 1996).

Here, Defendants point to two "subsequent events" that could render the case moot: first,

Defendants' concessions that they owe a duty to defend; and second, Great American's payment

of the invoices that had been submitted.  By carefully crafting its pleadings, Plaintiff has avoided

these potential pitfalls.  Instead of seeking a declaration that both Defendants owe a duty to

defend, Plaintiff seeks a declaration that Defendants are "obligated to provide H.I.S. a prompt,

immediate, and complete defense in the *Gold Bug* action," FAC ¶¶ 48-49; and that they

"breached [their] defense obligations to H.I.S. by wrongfully denying prompt, immediate, and

complete payment of reasonable and necessary defense expenses," *id.* ¶¶ 50-51.

Neither Defendant has conceded that it was obliged to provide a "prompt" or

"immediate" defense, as the Complaint contemplates, and neither has conceded that it breached

any of its obligations to Plaintiff.  Accordingly, no subsequent event has mooted Plaintiff's
claims.

### B.  Any Case of Controversy Is Limited to the Speed of Defendants' Payments

In most insurance coverage disputes, the case or controversy concerns whether the
insurance provider owes a duty to defend or indemnify.  *See, e.g., Lumbermens Mut. Cas. Co. v.
RGIS Inventory Specialists, LLC*, No. 08-CV-1316(HB), 2010 WL 2017272 (S.D.N.Y. May 20,
2010).  In this case, however, Defendants acknowledge (subject to reservations of rights) that
they owe such a duty.  Plaintiff therefore concedes that "there is no current dispute as to whether
there is a duty to defend" in the Colorado action.  Pl. Reply to Great American, Dkt. 29, at 3.
Instead, Plaintiff argues that the "actual dispute here is that Great American and Tokio have
failed to actually provide a defense for H.I.S. in the [Colorado] action."  *Id.* at 2 (emphases
omitted).  Specifically, Plaintiff takes issue with the Defendants' reservations of rights and their
delay in paying Plaintiff's invoices.  *Id.*

Defendants' reservations of rights do not form an actionable component of any
controversy.  If Defendants timely performed under the contract but reserved rights, there could
be no cause of action unless and until Defendants determined to exercise the rights they had
reserved.  In *Lumbermens*, a case on which Plaintiff relies heavily, the insurer sought to enforce
a right of recoupment that it reserved when it agreed to make a payment towards the insured's
settlement.  2010 WL 2017272, at *1-2.  Because the insurer was actually seeking to enforce its
right, that case presented a justiciable controversy.  The same is true in any case in which an
insurer seeks a declaration that it does not owe a duty to defend; the dispute over the duty to
defend in those cases is not conjectural or hypothetical.  *See, e.g., U.S. Underwriters Ins. Co. v.
City Club Hotel, LLC*, 369 F.3d 102, 106 (2d Cir. 2004).  Here, any dispute over whether the
Colorado action triggers Defendants' contractual duties is at best conjectural because neither

Defendant may ever exercise the right it has reserved.  Accordingly, Defendants' reservation of rights does not present a ripe controversy.

Defendants' delay in providing a defense arguably presents a different story.  Defendants do not explain why Plaintiff's claim that they are not providing a defense does not constitute a genuine controversy.  Defendants certainly contest Plaintiff's characterizations of their actions – they argue that they *are* performing their contractual duties, putting them directly at odds with Plaintiff's stated position.  The parties disagree as to the contours of Defendants' duties and the sufficiency of Defendants' compliance with their duty to defend; accordingly, the Court assumes at this stage that there is an actual controversy at issue.

## II.      Diversity Jurisdiction

Assuming *arguendo* that a disagreement about the contours of a duty to defend could constitute a "controversy" sufficient to satisfy Article III, the Court nevertheless needs a basis to exercise jurisdiction, because "the Declaratory Judgment Act does not by itself confer subject matter jurisdiction on the federal courts.  Rather, there must be an independent basis of jurisdiction before a district court may issue a declaratory judgment."  *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006) (*per curiam*) (internal citations and parenthetical quotation omitted); *see also* 28 U.S.C. § 2201.  Plaintiff seeks to invoke the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, which "requir[es] that the parties be diverse and that the amount in controversy exceed $75,000."  *Id.*  Diversity of the parties is not disputed.

"'In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.'"  *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 68 (2d Cir. 2012) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)).  "[T]he amount in controversy is

not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation." *Beacon Const. Co. v. Matco Elec. Co.*, 521 F.2d 392, 399 (2d Cir. 1975).

Plaintiff notes that it has already incurred over $80,000 in defense costs associated with the Colorado action; it therefore argues that the amount in controversy clearly exceeds the $75,000 threshold. This accounting, however, ignores the precise point that Plaintiff emphasized heavily in arguing that there is a live controversy – it assumes that the issue is *whether* Defendants have a duty to defend; this accounting is not relevant to the more specific dispute that still exists between the parties about *when* Defendants must remit payment pursuant to a duty that they concede they owe. The "value of the consequences which may result from the litigation," *id.*, is restricted to the difference between the time value of payments on the schedule that Plaintiff insists is its due and the time value of payment on the schedule Defendants are actually paying. There is no evidence in the record from which the Court could conclude that Defendants' late payments, even if they were to continue, would be worth more than $75,000.[3] Accordingly, the amount in controversy in this case does not exceed the jurisdictional minimum for the Court to entertain federal diversity jurisdiction.[4]

---

[3]   The Court notes that the prime rate is currently 3.25 percent. *Selected Interest Rates (Weekly)*, BD. OF GOVERNORS OF FED. RESERVE SYS. (May 26, 2015), http://www.federalreserve.gov/releases/h15/current/. Even assuming that Defendants took a full year to pay the next $80,000 in fees (and based on the parties' submissions, only approximately $30,000 in fees have been incurred since February), and even assuming Plaintiff is paying twice the prime rate on past due invoices to its attorneys, it would take many years for the interest accrued to get anywhere close to $75,000.

[4]   Even if this action did meet the threshold requirements of federal subject matter jurisdiction, the Court would decline to entertain it. "The Declaratory Judgment Act by its express terms vests a district court with discretion to determine whether it will exert jurisdiction over a proposed declaratory action or not." *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003) (*per curiam*). Courts have elected not to entertain declaratory judgment actions where a breach of contract suit was available to the plaintiff. *See, e.g.*, *BGA, LLC v. Ulster Cnty., N.Y.*, 320 F. App'x 92, 92 (2d Cir. 2009) (summary order).

## CONCLUSION

For the foregoing reasons, the case is DISMISSED without prejudice for lack of federal subject matter jurisdiction.  The Clerk of the Court is respectfully directed to terminate docket entry 5 and to terminate the case.

**SO ORDERED.**

**Date:  May 27, 2015**          **VALERIE CAPRONI**
      **New York, New York**          **United States District Judge**